# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) |
| | ) |
| **DAVID LYLE SHEHI** | ) |

## PLEA AGREEMENT

The Government and the defendant, **DAVID LYLE SHEHI**, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to **COUNT ONE** of the Information filed in the above-numbered and -captioned matter; (ii) consent to forfeiture as described in section **XII** below; (iii) pay restitution as determined by the Court; and (iv) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorneys, agrees to recommend the disposition specified below, subject to the conditions in section **VII**.

Defendant's Initials 

# TERMS OF THE AGREEMENT

I. **MAXIMUM PUNISHMENT**

The defendant understands that the maximum statutory punishment that may be imposed for conspiracy to receive kickbacks and commit health care fraud, in violation of 18 U.S.C. § 371, as charged in **COUNT ONE**, is:

   A.   Imprisonment for not more than five years,

   B.   A fine of not more than $250,000, or

   C.   Both A and B;

   D.   Supervised release of not more than three years; and

   E.   A special assessment of $100.

II. **FACTUAL BASIS FOR PLEA**

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

During the period between at least in or about 2016 and in or about 2018, the defendant conspired with others to receive kickbacks (in violation of 42 U.S.C. § 1320a-7b(b)(1)) and commit health care fraud (in violation of 18 U.S.C. § 1347), all in violation of 18 U.S.C. § 371.

It was part of the conspiracy that the defendant and others caused Etowah Pain to bill health care benefit programs for office visits using CPT codes that were not warranted, despite having been warned by employees that this was not allowed. It was also part of the conspiracy that the defendant and others caused Etowah Pain to order electro-diagnostic tests from QBR in return for kickbacks for each patient for whom such tests were ordered and billed.

A.   **Relevant Individuals and Entities**

The defendant owned a pain management clinic in Rainbow City, Alabama. The clinic was organized as Complex Solutions, LLC, and did business under the name Etowah Pain. The defendant was not a licensed medical professional. At certain times, including as recently as 2022, the defendant wrote prescriptions for medications to himself under the names, and without the authorization, of prescribers associated with Etowah Pain.

Doctor 1 was the sole physician at Etowah Pain. The defendant recruited Doctor 1 to serve as the physician at Etowah Pain. Doctor 1 had no prior experience or expertise in pain management.

James Ray owned Integrity Medical, LLC, through which Ray marketed health care products and services, including prescription drugs from specialty pharmacies, durable medical equipment (DME), and electro-diagnostic testing.

John Hornbuckle was President and CEO of QBR, LLC (QBR), a company that provided electro-diagnostic testing. Hornbuckle paid Ray and others to generate patient referrals to QBR for electro-diagnostic testing. Through QBR, Hornbuckle paid Etowah Pain to refer patients to QBR for electro-diagnostic testing.

Dr. Eric Beck owned and operated Valley Center for Nerve Studies and Rehabilitation (Valley Center) and billed insurers for electro-diagnostic testing performed by QBR technicians.

Individual A was, for a time, paid by Ray, through Integrity Medical, to work at Etowah Pain, and to generate prescriptions, DME orders, and electro-diagnostic test orders from Etowah Pain. Individual A was paid a fee per prescription issued, DME ordered, and electro-diagnostic test ordered by Doctor 1 that was reimbursed by insurance.

Medicare is a "federal health care program," as defined in 42 U.S.C. § 1320a-7b(f). Medicare and Blue Cross Blue Shield of Alabama (Blue Cross) are "health care benefit programs," as defined in 18 U.S.C. § 24(b). These and other health care benefit programs will pay a medical provider only for medical services or goods that are medically necessary for the treatment of the patient being provided the services or goods. In addition, these health care benefit programs will not pay for medical services or goods that were provided in violation of the federal Anti-Kickback

Statute. These health care benefit programs also require providers to collect co-pays, typically a fixed amount, from patients, in part so that the patient is financially motivated to decline medically unnecessary or otherwise fraudulent services or goods.

### B.     QBR

QBR did business under the name Diagnostic Referral Community. QBR was in the business of conducting electro-diagnostic testing, including nerve conduction velocity tests (NCV tests) and sensory evoked potential tests (SEP tests).

An NCV test, also called a nerve conduction study, measures how fast an electrical impulse moves through a patient's nerve and is used to identify nerve damage. An NCV test is performed by running an electrical impulse through the nerve being tested. An SEP test measures electrical activity in the brain in response to stimulation of sight, sound, or touch.

QBR employed technicians to perform NCV and SEP tests on patients referred to QBR by Doctor 1, and QBR provided the testing equipment for those tests. QBR technicians went to Etowah Pain to perform testing on patients there.

In exchange for Doctor 1's referrals of patients to QBR, QBR paid the defendant, through Etowah Pain, a fee for each patient referred for testing that was ultimately reimbursed by insurance.

QBR sent the NCV and SEP test results to Valley Center, which was operated by Dr. Beck. After tests were interpreted, a separate billing company, owned by Dr. Beck, billed each patient's insurance for the testing. Valley Center was then paid by the patient's insurance for the testing. Valley Center then paid money it received from insurance to QBR.

Medicare paid more than $472,000 for electro-diagnostic testing performed by QBR and ordered by Doctor 1. Blue Cross paid more than $374,000 for electro-diagnostic testing performed by QBR and ordered by Doctor 1.

### C.     Office Visit Billing

Medicare and Blue Cross will pay for certain medically reasonable and necessary services, such as office visits, provided to their beneficiaries.

Medicare and Blue Cross rely on standardized code sets to pay health care claims including for office visits. One such code set, the Current Procedural Terminology (CPT), consists of five-digit codes listing certain procedures and services performed or ordered by health care providers. The procedures and services represented by CPT codes are health care benefits, items, and services within the meaning of 18 U.S.C. § 24(b).

When claims are submitted to health care benefit programs, health care providers or their designees are expected to identify the proper CPT code or other identifier corresponding to the medical service provided, as well as any appropriate modifiers to designate personnel who performed the visit. Services provided by nurses or other medical staff may be reimbursed by health care benefit programs at a lower rate than services provided by physicians. Office visits that take less physician time or are less medically complex may be reimbursed by health care benefit programs at a lower rate than more time-intensive or medically complex office visits would be reimbursed.

The defendant and others caused Etowah Pain to routinely bill health care benefit programs, including Medicare and Blue Cross, for patient office visits using the CPT code that would generate the highest reimbursement. The defendant and others did so even though that code was not warranted for those patient office visits, and others at Etowah Pain warned the defendant that billing in this manner was not allowed by the health care benefit programs.

### D.   Venue

The acts described above occurred within Etowah County in the Northern District of Alabama, and elsewhere. Venue is appropriate in the Northern District of Alabama.

### E.   Loss Amount

The parties stipulate that, for purposes of calculating the defendant's sentencing guidelines, the amount of loss attributable to the defendant for the kickback and health care fraud conspiracy, based on his knowledge, is between $550,000 and $1,500,000.

Defendant's Initials

The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.

_____
**DAVID LYLE SHEHI**

### III. RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

   A.   That the defendant be awarded a two-level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

   B.   That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the advisory United States

       Sentencing Guideline range as calculated by the Court at the time of sentencing;

C. That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release and the following special condition: that the defendant not work in a job that involves billing Federal health insurance programs or work for a business that bills Federal health care programs;

D. That the defendant be required to pay restitution to all the victims of the defendant's crimes, as determined by the Court;

E. That the defendant be required to comply with the forfeiture provisions set forth in section **XII** of this agreement; and

F. That the defendant pay a special assessment of $100, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. STATUTE OF LIMITATIONS WAIVER

**In consideration of the recommended disposition of this case, I, DAVID LYLE SHEHI, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including December 2, 2022, until and including the date of entry of any order setting this plea agreement aside.**

Defendant's Initials _____

B.   RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, DAVID LYLE SHEHI, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

      1.    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

      2.    Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

      3.    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their

application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, DAVID LYLE SHEHI, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
DAVID LYLE SHEHI

## V. UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence

recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.   VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII.   OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.  COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;
- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;
- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;
- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;
- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's

Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

X. **AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION**

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

XI. **TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS**

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending

or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

### XII. FORFEITURE

The defendant agrees to consent to the immediate entry of a final order of forfeiture against the defendant, pursuant to Fed. R. Crim. P. 32.2(b)(l), in the amount of $70,290, which represents proceeds the defendant personally obtained, controlled, or benefitted from as a result of the offense alleged in COUNT ONE of the Information and to which the defendant is indicating the defendant's desire to plead guilty by way of this written Plea Agreement. For purposes of entering said order of forfeiture, the defendant acknowledges that a nexus exists between said amount and the criminal offense to which the defendant is pleading guilty.

The defendant acknowledges that if, due to an act or omission of the defendant, directly forfeitable property: (i) cannot be located upon the exercise of due diligence; (ii) has been transferred or sold to, or deposited with, a third party; (iii) has been placed beyond the jurisdiction of the Court; (iv) has been substantially diminished in value; or (v) has been commingled with other property which cannot be divided without difficulty, as a result, the Government is authorized under law to seek the forfeiture of any and all assets of the defendant as substitute assets for the purpose of satisfying the final order

of forfeiture until same is satisfied in full. As a result, the defendant consents to the forfeiture of any and all of the defendant's property up to the value of $70,290, representing proceeds the defendant personally obtained, controlled, or benefitted from as a result of the offense alleged in COUNT ONE of the Information.

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Information, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture

Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Information and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

### XIII. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses,

including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

### XIV. DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of 18 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

Defendant's Initials

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here: N/A

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

1/27/2023
DATE

DAVID LYLE SHEHI
Defendant

### XV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case

and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

1/23/2023
DATE

TOMMY SPINA
DAVID MCKNIGHT
Defendant's Counsel

## XVI. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

2/10/23
DATE

JOHN B. WARD
Assistant United States Attorney

2/10/23
DATE

DON B. LONG III
Assistant United States Attorney